### THE TUG NO. 32.

#### (District Court, S. D. New York. August 5, 1905.)

**COLLISION—STEAM VESSELS MEETING—MISUNDERSTANDING OF SIGNALS.**

Conflicting evidence considered, and *held* to show that a tug and a steam lighter, which came into collision when meeting in East river under the Brooklyn Bridge, were approaching each other in such positions and on such courses that they should have passed port to port, and that the lighter was in fault for misunderstanding the tug's signal to so pass and in turning to port across the course of the tug.

[Ed. Note.—Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

In Admiralty. Suit for collision.

Butler, Notman & Mynderse, Wilhelmus Mynderse, and Charles G. Burlingham, for libellants.

Robinson, Biddle & Ward, Henry G. Ward, and W. S. Montgomery, for claimant.

ADAMS, District Judge. This action was brought by the Old Dominion Steamship Company, the owner of the steam lighter Marie, to recover from the Pennsylvania Railroad Company's Tug No. 32, the damages suffered by reason of a collision, which took place between such vessels about 5 o'clock P. M. on the 2nd day of November, 1904, in the East River, in the vicinity of the Brooklyn Bridge. The Marie was sunk and her cargo of bagging and cotton was either lost or damaged. The fireman, William Petersen, was scalded by the escape of steam and others of the crew lost the personal effects, which they had on board.

The Marie was about 85 feet long and constructed to carry cargo, chiefly on deck. Her full speed was about 5 miles an hour and on this occasion, with the assistance of an ebb current of about 2 miles an hour, she was making about 7 miles over the ground. She was bound down the river from North Street, Greenpoint, to Union stores near Hamilton Ferry, Brooklyn. Her contention is that when she had reached a point a little above the Bridge, about 500 feet from the Brooklyn shore, she discovered No. 32 a little below the Bridge on her own starboard hand; that she was showing her starboard side to No. 32, and gave a signal of two blasts to No. 32, which the latter answered promptly and distinctly with a similar signal; that the Marie then changed to the port, but it was not much owing to the presence of two tows inside of her; that the No. 32 instead of conforming her course to the signals, when she approached to within a distance of about 200 feet from the Marie, took a rank run to the starboard, across the bow of the Marie, blowing a signal of one blast; that the Marie stopped and reversed her engines but was unable to avoid a collision, which occurred by No. 32 striking her starboard bow, 6 feet from the stem, cutting into the keel and causing the Marie to sink in a few minutes.

The No. 32 was a tug of 106 feet in length and 26 feet in width. She left pier 4 East River at 4:40 o'clock P. M., bound for the foot of Washington Street, Brooklyn. Her contention is that she was going at about the rate of 7 or 8 miles an hour over the ground; that she took a diagonal course across the river and exchanged a signal of two whistles with a ferry boat coming out of the Fulton Ferry slip, Brooklyn, and bound for New York, and passed across her bow; that she then exchanged a signal of two blasts with one of the tugs on the inside of the Marie, having three boats in tow alongside, two on the starboard and one on the port; that the Marie, which was somewhat astern of that tug, was on the 32's port hand and signals of one blast were exchanged with her; that in this situation all of the vessels would have passed clear of each other but the Marie, when close at hand, blew a signal of two blasts and sheered suddenly to port; that No. 32 answered with danger signals, put her helm to port and reversed but the collision could not then be avoided and No. 32 struck the Marie on the starboard side, just abaft her bow.

It will be seen that the principal controversies are with respect to the positions of the vessels to each other and the whistles exchanged, it being contended by the Marie that she had No. 32 on

her own starboard hand and that they agreed upon a two whistle course, while the No. 32 contends that the vessels were in positions to pass port to port and they exchanged signals accordingly.

A great many witnesses have been examined in support of the respective contentions and on the testimony it would be difficult to determine the truth of the matter but fortunately aid is received from the surroundings. The East River at the Bridge makes rather a sharp turn to the southward, so that a line run through the center of the river above the Bridge would strike the New York shore less than 500 feet below the Bridge. The Marie was somewhat to the southward of the middle of the river but for all practical purposes may be considered to have been in the middle and on a course parallel with the Brooklyn shore. Such being the situation, the No. 32 obviously could not have been a point on the Marie's starboard bow, as contended, without being very close on the Manhattan shore below the Bridge. So far from this being true, the preponderance of the testimony shows that the No. 32 was well out in the river and I think establishes the No. 32's contention with respect to the relative positions of the vessels. The collision happened just under the Bridge. I find that the Marie was the outside vessel and presented her starboard side to No. 32 by sheering to the port in the extremity of the collision. Under these circumstances, it is obvious that the misunderstanding of signals was a fault on the part of the Marie. The positions of the vessels were such that passing port to port was proper and I do not see that there was anything in the positions of the other vessels between the Marie and the Brooklyn shore to interfere with a proper manœuvre on her part, which was to port and go to starboard, thus leaving ample room for the No. 32 to pass in the proper and agreed manner.

The libel should be dismissed.